IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-03014-REB-CBS

MICHAEL REA,
CHARLES G. MEDICINE BLANKET,
 Plaintiffs,
v.

COLORADO DEPT. OF CORRECTIONS,
 Defendant.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer:

 This civil action comes before the court on: (1) Plaintiffs Michael Rea and Charles Medicine Blanket's Motion for a Prohibitory (Preliminary) Injunction pursuant to Fed. R. Civ. P. 65 (filed April 9, 2010) (Doc. # 25); and (2) Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. #36). Pursuant to the Order of Reference dated March 12, 2010 (Doc. # 19) these matters were referred to the Magistrate Judge.  The court has reviewed the Motions, Defendant's Response to Motion for Prohibitory Injunction (Doc. # 31), Plaintiffs' Reply to Defendant's Response to Motion for Prohibitory Injunction (Doc. # 33), Plaintiffs' response to Motion to Dismiss (Doc. # 44), the pleadings, applicable law, and is sufficiently advised in the premises.

MOTION TO DISMISS

I. Statement of the Case

 Plaintiffs Rea and Medicine Blanket are *pro se* inmates who engage in Native American religious practices. (*See* Doc. # 9, pp. 2-4).  They are Colorado state prisoners who identify themselves as ethnic Lakota. (*See* Doc. # 9, p. 4). They allege

multiple violations of their religious rights. The Colorado Department of Corrections (CDOC) is the only defendant named in the Amended Complaint. (*See* Doc. #1).

Rea and Medicine Blanket bring two claims. First, they allege that the CDOC fails to include Colo. Rev. Stat. § 17-42-102 as controlling legal authority for the prison's Administrative Regulation 800-01. (*See* Doc. #9, p.4). Under claim one, Plaintiffs also allege violation of "basic [religious] freedoms" and cite the First Amendment as governing law. (Doc. #9, p.4-5). Second, they allege that CDOC actions violate state law by "violating the sovereign right of the American Indian" as described in C.R.S. § 17-42-102, specifically American Indians' religious freedoms and traditional practices. (*See* Doc. #9, p.8). Plaintiffs also ask for punitive damages and seek multiple forms of injunctive relief that include:

> (1) an order requiring the CDOC to cite C.R.S. § 17-42-102 as authoritative law for Administrative Regulation 800-01, or that the CDOC create a separate Administrative Regulation that exclusively covers Native American inmates;
>
> (2) an order prohibiting the CDOC or any private prison from interfering with or retaliating against Plaintiffs for engaging in Native American religious practices or accessing the sweat lodge and its grounds;
>
> (3) an order prohibiting acting Chaplain Dycus from "interfering" with the Plaintiffs and replacing Chaplain Dycus with associate Chaplain Dempsey;
>
> (4) an order requiring that Plaintiffs be allowed to hold daily worship and prayer meetings at the sweat lodge;
>
> (5) an order requiring the CDOC to purchase, with its own funds, wood and other organic materials to be used in permissible weekly prayer ceremonies;

(6) an order prohibiting non-ethnic Native American inmates from "further invading the respective culture and religious practices" of ethnic Native Americans, and to grant Native American inmates access to religious services regardless of their prison confinement status; and,

(7) an order requiring that the CDOC allow and designate tribal nations and tribal "colleges" as "approved vendors" of Native American culture, lifestyle, religious practices, and history.

(*See* Doc. # 9, pp. 18-19). Although these items are couched as requests for relief, Plaintiffs are really alleging additional claims.

On May 14, 2010, the CDOC moved to dismiss all of the Plaintiffs' claims (listed in the Complaint) pursuant to Fed. R. Civ. P. 12(b)(6), based upon two primary arguments. (*See* Doc. #36). First, the CDOC argues that Plaintiffs' claims for monetary damages are barred by the Eleventh Amendment. (*See* Doc. #36, p. 3). Second, the CDOC argues that Plaintiffs fail to state a claim upon which relief can be granted for the following claims: Plaintiffs' request seeking to require the CDOC to add additional points of authority to support Administrative Regulation 800-01 (Doc. #36, p. 4); Plaintiffs' request that the CDOC segregate the religious programs for ethnic Native Americans from non-ethnic Native Americans (*See* Doc. #36, p. 7); Plaintiffs' request that the CDOC budget for and purchase wood and other organic materials for weekly religious use (*See* Doc. #36, p. 8); Plaintiffs' request for daily prayer meetings on lodge grounds (*See* Doc. #36, p. 10); Plaintiffs' requests for injunctions and court management of prison operations (*See* Doc. #36, p. 12); and Plaintiffs' request for an injunction prohibiting any interference or retaliation against them (*See* Doc. #36, p. 14).

II. Standard of Review

Because Plaintiffs appear *pro se*, the court "review[s] [their] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). Despite the less stringent standards for a *pro se* plaintiff, a "broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id*. The burden remains on the plaintiff because a *pro se* plaintiff can "recount the facts surrounding his alleged injury" without any formal legal training. *Id.*

A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on the plaintiff's behalf"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). Finally, the court should not act as an advocate for the *pro se* litigant.

*Hall*, 935 F.2d at 1110.

The court is empowered to dismiss an action "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a) requires that the complaint provide a "short and plain statement...showing the pleader is entitled to relief," but contain more than "an unadorned the-defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 555 (2007). If the requirements of Rule 8(a) are met, then the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F. 3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified what constitutes a "well-pleaded fact" for the purposes of a Fed. R. Civ. P. 12 analysis. Although a plaintiff is not required to set forth "detailed factual allegations," the plaintiff's allegations must "be enough to raise a right to relief above the speculative level" - the plaintiff must offer more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" that lack further factual support. *Iqbal*, 129 S.Ct. At 1949. In addition, the facts pled must demonstrate a "plausible" claim for relief rather than a mere "possibility" that the defendant engaged in unlawful conduct. *Id.* at 1249-1250. A claim is "plausible" only if a plaintiff pleads sufficient facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 1949.

III.     Analysis

The court concludes that for several reasons Plaintiffs are not entitled to the relief they seek.

A.     The Complaint fails to state a claim upon which relief can be granted

1.     Constitutional claim under 42 U.S.C. § 1983

Plaintiffs do not have a cause of action under 42 U.S.C. § 1983 (Civil Action for Deprivation of Rights) based on an alleged violation of Colorado state law. *Medina v. Colo. Dep't of Corrs.*, Slip Op. 2010 WL 537762, *6 (D. Colo.).[1] Only a *federally* protected right may be enforced under 42 U.S.C § 1983: "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994). In order to state a claim under § 1983, the complaint must allege facts, that when assumed to be true, would demonstrate that persons acting under color of state law deprived Plaintiffs of a right secured by federal law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *See* Section B.3 and Section C.

Plaintiffs' two claims allege conflict with state law. Plaintiffs first alleged that the CDOC failed to include C.R.S. § 17-42-102 as a controlling legal authority for the prison's Administrative Regulation 800-01. (*See* Doc. #9, p.4). Second, Plaintiffs alleged that the CDOC's actions conflict with state law by "violating the sovereign right of the American Indian" as described in C.R.S. § 17-42-102 . *Id.* at p.8. Although Plaintiffs have not properly alleged a violation of a constitutional right, the court liberally construes Plaintiffs' Complaint to allege a violation of the First Amendment and the

---

[1]     Copies of unpublished decisions cited are attached to this Recommendation.

Religious Land Use and Institutionalized Persons Act (RLUIPA), as analyzed below. *See* Section 3.

2.   Plaintiffs' claims for monetary damages are barred by the Eleventh Amendment

Fed. R. Civ. P. 12(b)(1) must briefly be analyzed because of Defendant's assertion of Eleventh Amendment immunity, which constitutes a challenge to the allegations of subject matter. The court is empowered to dismiss an action "for lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).[2]

The CDOC is entitled to immunity from the Plaintiff's claims. The Eleventh Amendment bars suits by private persons against states or state agencies for damages. *Edelman v. Jordan*, 415 U.S. 651, 622-63 (1974); *Mt. Healthy City School Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274, 280 (1977). Because the CDOC is a state agency, it is immune from suits for monetary damages and the court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *Griess v. State of Colorado*, 841 F.2d 1042, 1044 (10th Cir. 1988).

3.   Plaintiffs' claims regarding prison regulation of religious practices fail to state a claim upon which relief can be granted

First, Plaintiffs argue that they should be allowed to attend prayer meetings on

---

[2]Federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. The party invoking the federal court's jurisdiction bears the burden of proof and has a duty to establish that federal jurisdiction does exist. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Fed. R. Civ. P. 12(h)(3) states that if at any time the court determines it lacks subject matter jurisdiction, it must dismiss the action. Whether the federal court has jurisdiction "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).

sweat lodge grounds on a daily basis. (*See* Doc. #9, p. 18).  Currently, under Administrative Regulation 800-01, inmates who practice Native American faiths are permitted to hold a weekly communal prayer ceremony in sweat lodges. (*See* Doc. #36, Exhibit A-1, AR 800-01). Although the CDOC has limited the frequency of communal prayer ceremonies, Plaintiffs have not argued that lack of daily communal prayer at the sweat lodge violates the core tenants of their religion. To the extent that Plaintiffs argue their claims under the First Amendment or RLUIPA, their religious practices may still be limited.

Under a First Amendment analysis, as long as a prisoner is afforded *سufficient* means to practice his or her religion, the law is satisfied; a prisoner's personal preferences need not be taken into account. *See Hammons v. Saffle*, 348 F.3d 1250, 1256 (10th Cir. 2001). The *Hammons* court emphasized the distinction between preferences and core beliefs: "it is one thing to curtail various ways of expressing belief...it is another to require a believer to defile himself...by doing something that is completely forbidden by the believer's religion. *Ia.* (quoting *Beerheide v. Suthers*, 286 F.3d 1179, 1192 (10th Cir. 2002)).  In addition, "courts must also be deferential to the discretion of corrections officials" when an accommodation may have "ripple effect[s] on fellow inmates or prison staff." *Id.* at 1257.

Because of this deference principle, Plaintiffs bear the initial burden of showing a "substantial burden." *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007). The United States "Supreme Court has defined a 'substantial burden' as one that 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Thomas v. Review Bd. Of Indiana Employment Sec. Div.,* 450 U.S. 707, 718 (1981) (for the

purposes of First Amendment analysis and free exercise of religion).

In comparison, "Section 3 of RLUIPA applies strict scrutiny to government actions that substantially burden the religious exercise of institutionalized persons." *Grady v. Holmes*, 2008 U.S. Dist. LEXIS 112312, *9 (D. Colo. 2008). Under RLUIPA, a prison cannot "'impose a substantial burden on the religious exercise' of an inmate unless [it] demonstrates that the imposition of the burden on that person... (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Ahmad v. Furlong*, 435 F.3d 1196, 1197 (10th Cir. 2006).  RLUIPA defines religious exercise to "include any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). However, the U.S. Supreme Court "does not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety"; "due deference" should be given to prison and jail administrators in particular to establish regulations necessary to "maintain good order, security, discipline, consistent with consideration of costs, and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005).

Plaintiffs have not adequately alleged a substantial burden on their religious exercise under the First Amendment or RLUIPA. Although they may prefer daily communal prayer, Plaintiffs have not alleged that they have been denied an opportunity to practice the tenants of their religion or that they have been discriminated against for their beliefs. All that is required is that Plaintiffs be afforded a reasonable opportunity to practice their religion. *Grady v. Holmes*, U.S. Dist. LEXIS 112312 at *12 . And even if the sharing of traditional Native American practices with non-ethnic Native Americans is

(in their personal view) harmful, Plaintiffs have not alleged that the protection of their religious rights outweigh other prisoners' religious rights.

Second, Plaintiffs argue that ethnic Native Americans should be allowed to practice their religion apart from non-ethnic Native Americans who also practice a Native American religion. *Id.* at pp. 5-6, 18. Alternatively, the Plaintiffs ask that "CDOC...create a distinct system" for ethnic Native American inmates. *Id.* at 18.

Although the presence of non-ethnic Native Americans may violate the Plaintiffs' personal religious beliefs, such a racially selective ban would violate the religious rights of other inmates. In a similar case, the District Court of Colorado held that a Lakota inmate was not entitled to have non-Lakotas excluded from the sweat lodge despite the personal harm to the plaintiff. *Martinez v. Ortiz*, 2006 WL 771326. **3-5 (D. Colo. March 20, 2006). While the court acknowledged that the plaintiff was harmed because ceremonial traditions were not strictly adhered to, the CDOC's "interest in protecting all religious freedom...outweighs Plaintiff's interest in forcing prison officials to strictly follow the traditions." *Id.* at *4.

All racial classifications imposed by government must be reviewed under strict scrutiny. *Johnson v. California*, 543 U.S. 499, 505 (2005). Plaintiffs' desire to have segregated religious practices is not sufficiently persuasive to pass the strict scrutiny standard given that other prisoners' First Amendment right to free exercise of religion would be infringed. Plaintiffs have the right to free exercise of religion, but it may be restricted to further legitimate goals. *Howard v. United States*, 864 F. Supp. 1019, 1025 (1994). A ban on racial discrimination is "consistent with proper prison administration" and protects not only the interests of other prisoners, but promotes public respect for

the justice system. *Johnson v. California*, 543 U.S. 511 (2005). Further, granting a prison an "exemption from the rule that strict scrutiny applies to all racial classifications would 'undermine our unceasing efforts to eradicate racial prejudice from our criminal justice system.'" *Id.* at 512 (quoting *McCleskey v. Kemp*, 481 U.S. 279, 309). Therefore, Plaintiffs fail to state a claim.

Third, Plaintiffs request that the court require the CDOC to make weekly purchases of wood and other religious materials for Plaintiffs' religious use. However, prison officials do not have an affirmative duty to provide free religious materials or other articles to inmates. *See Frank v. Terrell*, 858 F.2d 1090, 1091 (5th Cir. 1988). All that is required is that the inmates be afforded an opportunity to practice their religion - "a prisoner may be inconvenienced in the practice of his or her faith so long as the governmental conduct does not prohibit the prisoner from 'participating in the mandates of his religion.'" *Grady v. Holmes*, U.S. Dist. LEXIS 112312 at *11. In sum, "the fact that a person has a constitutional right...does not necessarily impose upon the government an obligation to subsidize that right." *Goodall by Goodall v. Stafford Co. School Board*, 60 F.3d 168, 171 (4th Cir. 1995)(citations omitted), *cert. denied*, 515 U.S. 1046 (1996). Thus, Plaintiffs have no right to force the CDOC to purchase additional materials for their personal religious use.

Fourth, Plaintiffs ask that the court manage CDOC religious practice operations. They ask that the court bar Chaplain Dycus from "interfering" with Plaintiffs, replace him with Chaplain Dempsey, and designate "approved vendors" of American Indian "culture, lifestyle, religious practices and... history." (Doc. #9, p. 18-19). It appears that Dycus' main "interference" was enforcement of prison regulations regarding fires during a

sweat lodge ceremony - "he could only go by what is read." (Doc. #9, p.8). Plaintiffs allege that secondary fire pits are widely used throughout CDOC prisons. Yet the CDOC "Amending Faith Group Practices" form, which Plaintiffs submitted to the CDOC (attached to Doc. #9), makes it clear that: (1) Plaintiffs already had one fire pit and wanted a second smaller pit, and (2) Plaintiffs sought to exclude other practitioners from the sweat lodge - based on heritage - as part of this request. (*See* Doc. #9-2, p.9). The CDOC denied Plaintiffs' administrative request to add "a small fire pit" for "practice by recognized Members of a US Tribe only" because (1) religious resources had already been made available to Plaintiffs and (2) "heritage cannot be required for observance of any faith practices." (*See* Doc. #9-2, p.9). Plaintiffs do not ask the court for relief due to harm incurred during religious ceremonies, but instead ask for an official, Dycus, to be removed.

To the extent that Plaintiffs ask the court to replace Dycus, as a threshold matter, inmates are not entitled to the religious advisor of their own choice. *Cruz v. Beto*, 405 U.S. at 322 n.2, see also *Reimers v. Oregon*, 863 F.2d 630, 632 (9th Cir. 1988). Further, "while 'convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison' neither to they maintain their rights to the same degree as other citizens." *Clifton v. Craig*, 924 F.2d 182, 184 (10th Cir. 1991) (quoting *Bell v. Wolfish*, 441 U.S. 520, 545). Lawful incarceration necessarily limits many privileges and rights. The Constitution is not a "micromanager of day-to-day activities" or " a guarantee of prisoner preferences over those of prison officials." *Hardy v. Price*, 996 F.2d 1064. 1068 (10th Cir. 1993).

It also appears that Plaintiffs can initiate contact with an external faith

representative, with the CDOC's assistance and pursuant to Administrative Regulation 800-01. (Doc. #9-2, p. 22). If a religious representative of an offender's faith is not represented through the CDOC, prisoners have the option of "contacting a person who has the appropriate credential[s] from the faith judicatory" to minister to them, under CDOC supervision. *Id.* The requests regarding Chaplain Dycus and "tribal vendors" are concluded under this analysis.

Finally, Plaintiffs ask the court to prevent retaliation, sanctions against, or interference with their sweat lodge practice. (*See* Doc. #9, p. 18). Plaintiffs complain of "acts [that] are forbidden according to tribal tradition," such as being "forced to urinate on religious sites" and guards interfering with a pipe ceremony by taking an inmate head count. (Doc. #9, p. 4). Yet Plaintiffs did not file a complaint regarding these potentially unlawful acts in particular, but instead used them to support their claim that the CDOC should include C.R.S. § 17-42-102 as legal authority in Administrative Regulation 800-01.

Given the posture of the claim it would be inappropriate for the court to assume that the Defendant has violated laws in ways that Plaintiffs have not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

MOTION FOR INJUNCTIVE RELIEF

On April 9, 2010, Plaintiffs filed a Motion for a Prohibitory (Preliminary) Injunction pursuant to Fed. R. Civ. P. 65(a). (*See* Doc. #25). Plaintiffs state that they were

informed by Chaplain Dycus that their sacred "peace pipes," which are used in Native American religious ceremonies, would be confiscated by the prison at some indefinite future date. (*See* Doc. #25, p. 3; Doc. #31-1, ¶ 6). The conversation occurred on or about April 7, 2010. (*See* Doc. #31-1, ¶ 5). Plaintiffs ask this court to issue an injunction prohibiting confiscation of their sacred pipes because (1) such pipes are the "actual corner stone" of the traditional Lakota faith - of which Plaintiffs are a part - and (2) there is "no reason to confiscate or dispose of the plaintiff [sic] personal pipes when no security [sic] or abuse has occurred." (*See* Doc. #25, p. 3).

On May 6, 2010 Defendant filed a Response to Plaintiffs' Motion for Prohibitory Injunction, arguing Plaintiffs' request for a injunctive relief is moot. (*See* Doc. #31, p. 4). The CDOC has "no plans to confiscate Plaintiffs' personal pipes...provided they do not misuse their personal pipes." (*See* Doc. #31-1,¶ 11). To date, the court has received no information from Plaintiffs to suggest otherwise; their personal pipes have not been confiscated.

I.     Standard of Review

Fed. R. Civ. P. 65(a) governs preliminary injunctions. A preliminary injunction pursuant to Rule 65 is "an extraordinary remedy; it is the exception rather than the rule." *GTE Corp. V. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). A preliminary injunction is meant to "preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "Because of the limited purpose of preliminary injunctions", three types of preliminary injunctions are specifically disfavored: "(1) preliminary injunctions that alter the status quo, (2) mandatory preliminary injunctions, and (3) preliminary injunctions that afford the movant all the

relief that is could recover at the conclusion of a full trial on the merits." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

In the Tenth Circuit, four factors must be shown for the court to issue a preliminary injunction: (1) that the plaintiff will suffer an irreparable injury unless the injunction is issued; (2) that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) that the injunction, if issued, would not be adverse to the public interest; and, (4) that there is a substantial likelihood of success on the merits. *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001). The Tenth Circuit has also adopted a modified likelihood of success on the merits standard; if the movant can meet the first three requirements listed above, then "the movant may establish likelihood of success by showing questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *Walmer v. United States DOD*, 52 F.3d 851, 854 (10th Cir. 1995). Here, Plaintiffs have not managed to tip the balance of factors in their favor.

II.     Analysis - The Motion for a Preliminary Injunction is Properly Denied

As the foregoing analysis makes clear, Plaintiffs are not likely to succeed on the merits of the case. Even if Plaintiffs were likely to succeed on the merits, they have not demonstrated irreparable injury. An injury is "irreparable" when the injury is "certain, great, actual and not theoretical." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). The Supreme Court has stated that "issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [their] characterization of injunctive relief *as an extraordinary remedy* that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v.*

*NRDC*, 555 U.S. 7, 28 (2008). The irreparable harm factor is key: "without a showing of irreparable harm, there exists no justification for granting...injunctive relief." *O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 1001-1002 (10th Cir. 2004). While "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," here, there is no concrete injury for the court to repair or even attempt to prevent. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Plaintiffs have not demonstrated that they have been deprived of their personal pipes. CDOC policy permits Native Americans to keep personal pipes due to their great spiritual significance. (*See* Doc. #31-1, ¶ 8). Although Administrative Regulation 800-01 provides that personal pipes will be confiscated and deemed contraband *if* the pipe is used to smoke tobacco or other substances (Doc. #31-1, ¶ 10), there is no indication that Plaintiffs have violated this regulation or that the prison intends to confiscate their pipes at this time (Doc. #31-1, ¶ 11). Because there is no demonstrated irreparable injury or an immediate threat of irreparable injury to the Plaintiffs, the request for a preliminary injunction is properly denied.

CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that:

1. Plaintiff's "Motion for Prohibitory Injunction pursuant to Fed. R. Civ. P. 65(a)" (filed April 9, 2010) (Doc. # 25) be DENIED;

2. Defendant's "Motion to Dismiss . . ." (filed May 14, 2010) (Doc. # 36) be GRANTED;

3. Plaintiffs' claims and this civil action be DISMISSED pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 7th day of December, 2010.

BY THE COURT:


   s/Craig B. Shaffer
United States Magistrate Judge